UNITED STATES v. EMERY-BIRD-THAYER DRY GOODS Co.. (No. 1812).[1]

1. PLEADING—PROTEST—EVIDENCE—BURDEN OF PROOF—CONTINGENT-FEE AGREEMENTS.

Paragraph N of section 3, tariff act of 1913, contains the following language: "No agreement for a contingent fee in respect to recovery or refund under protest shall be lawful. Compliance with this provision shall be a condition precedent to the validity of the protest and to any refund thereunder, and a violation of this provision shall be punishable by a fine not exceeding $500, or imprisonment for not more than one year, or both." This does not make it necessary for the protest to deny the existence of an agreement for a contingent fee, nor does it put upon the protestant the burden of proving that no such agreement has been made.

2. COTTON TURKISH TOWELS.

Cotton Turkish towels are dutiable as cotton towels (par. 264, tariff act of 1913), and not as pile fabrics (par. 257).

---

[1] T. D. 37273 (33 Treas. Dec., 43).

United States Court of Customs Appeals, May 21, 1917.

APPEAL from Board of United States General Appraisers, G. A. 8019 (T. D. 36959).
[Affirmed.]
*Bert Hanson,* Assistant Attorney General, for the United States.
*Walden & Webster (Henry J. Webster* of counsel) for appellees.

[Oral argument May 11, 1917, by Mr. Hanson and Mr. Webster.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

. The merchandise in this case consists of cotton Turkish towels, which were assessed with duty at the rate of 40 per cent ad valorem as pile fabrics under paragraph 257, tariff act of 1913.

The importers protested, claiming assessment at the rate of 25 per cent ad valorem under the provision for cotton towels in paragraph 264 of the same act.

The Board of General Appraisers sustained the protest, and the Government appealed.

The issue in the case as submitted to the court does not relate so much to the classification of the merchandise as to the force and effect in practice of the provisions against contingent fees, which appear in paragraph N of section 3 of the act and which are new to tariff legislation. The following is a copy of the entire paragraph, with the provisions now in question in italics:

N. That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, or upon merchandise on which duty shall have been assessed, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, than he shall claim to be legally payable, file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon. Such protest shall be deemed to be finally abandoned and waived unless within thirty days from the date of filing thereof the person who filed such notice or protest shall have deposited with the collector of customs a fee of $1 with respect to each protest. Such fee shall be deposited and accounted for as miscellaneous receipts, and in case the protest in connection with which such fee was deposited shall be finally sustained in whole or in part, such fee shall be refunded to the importer, with the duties found to be collected in excess, from the appropriation for the refund to importers of excess of deposits. *No agreement for a contingent fee in respect to recovery or refund under protest shall be lawful. Compliance with this provision shall be a condition precedent to the validity of the protest and to any refund thereunder, and a violation of this provision shall be punishable by a fine not exceeding $500, or imprisonment for not more than one year, or both.*

Upon such payment of duties, protest, and deposit of protest fee, the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of nine general appraisers, for due assignment and determination as provided by law; such determination shall be final and conclusive upon all persons interested therein, and the record shall be transmitted to the proper collector or person acting as such, who shall liquidate the entry accordingly, except in cases where an appeal shall be filed in the United States Court of Customs Appeals within the time and in the manner provided for by law.

At the trial before the board the Government first moved for a dismissal of the protest upon the ground that it failed to allege a compliance in the case with the foregoing provisions against contingent fees. It is conceded that the protest contained no allegation upon that subject; the board, however, held that such an allegation was not essential to the validity of the protest, and overruled the motion.

At the close of the whole case the Government moved that the case be dismissed, upon the ground that the protestants had failed to introduce any evidence tending to prove a compliance by them with the aforesaid provisions against contingent fees. It is conceded that no evidence to this effect was introduced by the protestants; the board however held that the protestants were not required to introduce proof in chief upon this subject, and overruled the motion.

These rulings are assigned as errors by the Government upon this appeal.

The Government bases its contention upon the provisions of paragraph N, supra, which, after prohibiting all agreements for contingent fees in respect to a recovery or refund under a protest, prescribe that "compliance with this provision shall be a condition precedent to the validity of the protest and to any refund thereunder." It is argued that the foregoing phrase "condition precedent" signifies that Congress had granted the remedy by protest upon the express condition that the protestant should comply with the inhibition against contingent fees, and that "it is elementary that one who invokes the benefit of a remedy granted on condition must show that he has complied with the condition before he can have the benefit of the remedy."

It will be observed that the present issues do not relate to the substantive law of the case, but to questions of practice only. The act unmistakably denies relief by protest to any protestant who has entered into an agreement for a contingent fee in relation thereto, and the only question is, Who has the affirmative respecting this at the trial before the board? Is it incumbent upon a protestant to allege in his protest that he has complied with the statutory provision against contingent fees, and must he prove such compliance by testimony in chief at the trial before the board, or does the burden of

proof rest upon the Government in this particular? .The present decision is addressed to these questions of practice only.

A condition precedent is said to be one which is to be performed before some right dependent thereon accrues. In the present instance the condition is manifestly negative in character. It is to the effect that the protestant shall not violate but shall observe and obey the statutory inhibition against contingent fees. The act denominates this as a condition precedent to the validity of the protest or to any refund thereunder. We can not believe, however, that the term as thus used signifies a condition which is to be performed before a right to protest in any case may accrue to an importer, for the condition in question is a continuing injunction which can never be fully performed until the protestant's relief is finally secured. The duty of refraining from agreements for contingent fees rests upon the protestant from the beginning to the end of his case, as well during the trial of the protest as before that time. Such a condition can in no case be said to be "performed" at the time of filing the protest, nor at any given time during the trial of it. The protest may be valid on one day because of the observance of the law up to that time, and may become invalid the next day by a violation of the law. The provision in question, therefore, is not a condition precedent in the sense of an act to be performed before a given right may accrue, or before a given remedy may be pursued, but rather as a continuing condition or injunction which is incumbent upon a protestant from the time that he enters his importation up to the time that he receives a refund. In this view the phrase is simply an emphatic statement of the legislative intention that a protestant's right of recovery under his protest shall be defeated and the protest thereby invalidated in case it appears that he has in fact entered into any agreement for contingent fees in reference thereto. A compliance with this continuing condition could only be averred pro tanto in the protest or proved in similar measure at the trial; in such case neither the allegation nor proof would be conclusive. On the other hand, proof by the Government of the actual existence of such an agreement in any case would be conclusive in the case. We think therefore that Congress did not use the expression "condition precedent" in the sense contended for by the Government, and that the burden of proof with regard to contingent fees was not thereby cast upon the protestant.

We are confirmed in this view by the terms of paragraph N, supra, which provides for the allowance of protests to importers and prescribes the time for the filing of the same, the terms upon which they may be allowed, and the form and contents of the protests themselves. In the latter particular the paragraph provides that an importer, if dissatisfied with the decision of the collector as

to the rate and amount of duties chargeable upon imported merchandise, may "file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto." These provisions contain no requirement that the protest shall contain an allegation of compliance by the protestant with the statutory prohibition against contingent fees, nor is such a requirement to be found elsewhere in the act. It thus appears that the legislative attention was directly addressed to the subject of the protest and the necessary allegations thereof, and that provisions were enacted in apparently comprehensive language in relation thereto, all without any specific requirement for such an allegation as that in question. It is reasonable to conclude, therefore, that Congress did not intend to require that the protest should contain such an allegation. This conclusion is not only effective as an answer to the first question raised by the record but as to the second one also, since in the absence of other controlling factors the general rule is that a party is required to prove at the trial only those things which he is required to set out in the statement of his case.

We are furthermore confirmed in our conclusion by the general rules of practice which relate to questions of this character. Ordinarily a litigant is not required in the first instance to plead or prove his innocence of crime, since such innocence will in general be presumed until it is directly put in issue. It was undoubtedly within the legislative authority to provide otherwise in respect to claims for a refund of tariff duties, but such a result argues strongly against the interpretation which produces it. It may also be said that in general a party is not required to prove a negative.

It may be argued that in practice the Government will be placed at a disadvantage under this ruling, since it may be unable to secure proof of a violation of the statute where such a violation has occurred. It must be observed, however, that the same enactment denounces agreements for contingent fees in such cases as criminal, nevertheless the ordinary rules of pleading and proof would prevail in the trial of indictments therefor. The Government suffers no greater disadvantage in the one case than in the other, and the disadvantage in each case is one approved by the long-time policy of the law.

In this view of the case, and in view of the fact that the protest was plainly right in respect to the classification of the merchandise, the decision of the board sustaining it is *affirmed*.